UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

RICHARD FERRY,

        Plaintiff,        6:15-cv-1136-AA

    v.                         ORDER

MICHAEL GROWER,
et al.,

        Defendants.

AIKEN, District Judge.

    Plaintiff is an inmate in the custody of the Oregon Department of Corrections ("ODOC"). After a hearing and review in which plaintiff was found to have engaged in sexual misconduct toward his son during visitation times, plaintiff's visitation rights with his son were permanently suspended.

    Plaintiff filed a complaint under 42 U.S.C. § 1983 alleging three claims for relief: 1) Cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments; 2) violation of right to familial association and free association in violation of the First and Fourteenth

1 - ORDER

Amendments; 3) denial of substantive due process in violation of the Fourteenth Amendment. Amended Complaint (#29) P. 30-32. Plaintiff seeks declaratory and injunctive relief and damages. Id.

Defendants now move for summary judgment on the following grounds: "1) the statute of limitations has passed; 2) the constitutional provisions alleged to have been violated were, not in fact, violated; 3) most of the individual defendants were not involved in the alleged deprivation of rights; 4) qualified immunity protects all defendants; 5) the Eleventh Amendment precludes 'official capacity' claims; and 6) the damage claims sought are improper." Defendants Motion for Summary Judgment (#60) p. 1.

Plaintiff has also filed a Motion for Summary Judgment (#75).

The facts giving rise to plaintiff's claims are as follows:[1] Plaintiff was convicted of four counts of sexual abuse in the first degree and two counts of sexual abuse in the third degree.

Plaintiff has a minor son (herein referred to as "R").

---

[1] Although plaintiff disagrees with defendants' characterization of the visiting room behavior that led to his discipline, suspension of visiting privileges, and ultimately his claims in this case, the facts set forth herein are supported by defendants' submissions of declarations and supporting evidence.

2 - ORDER

According to plaintiff his son has autism. On July 28, 2011, plaintiff was visiting with R in the playroom at the Oregon State Penitentiary ("OSP") which was against the rules because R was then ten years old and the playroom had clearly posted signs stating that the room was for children under eight. Corrections officer Reaves, observed plaintiff "excessively wrestling, tickling, & inappropriately touching his son." C/O Reaves prepared a memo stating that plaintiff was at times "rolling on top of his son, & then his son rolled on top of him, sitting over I/M Ferry's genitals for long periods of time." Officer Reaves reported his observation and impression that the extended physical contact was "excessive and inappropriate" to Sgt. Shelia Freeman.

Sgt. Freeman reviewed a video tape of plaintiff's visitation with R and observed "a lot of excessive physical contact" between plaintiff and R. She also noted that plaintiff seemed to stop the behavior when staff approached or other inmates came into the room. Sgt. Freeman reported the incident and her observations to higher officers and placed a note in the visitor's screen indicating that R would not be allowed in the playroom because he was over the eight year old age limit.

Cpl. Panther viewed the video tape of the incident and conducted an investigation, including reviewing 19 visits

3 - ORDER

between plaintiff and R. Cpl. Panther concluded thtaq plaintiff engaged in a "pattern of non-consensual sexual activity for his own stimulation with his autistic child ... committing Sexual Assault" and other rule violations. Executive Assistant to the Superintendent Michelle Dodson reviewed the video and in accordance with her authority terminated plaintiff's visitations rights with R for one year.

After a disciplinary hearing in October, 2001, plaintiff was found to have violated three separate misconduct rules and sanctioned to a 180-day suspension fo visitation, 120 days of disciplinary segregation, a $200 fine, and 14 days loss of privileges. This sanction was approved by Superintendent Premo and upheld after administrative review.

On December 8, 2011, Superintendent Premo, relying on Oregon Administrative Rule 291-127-0320, ruled that R would be permanently removed from plaintiff's visiting list. On June 14, 2012, Mr. Grower upheld Superintendent Premo's decision. Pursuant to Or. Admin. R. 291-127-0330(2), "[t]he decision of the Assistant Director or designee shall be final." Visitors can request reconsideration five years after the permanent removal.

In November 2011, plaintiff was involved in a incident involving the use of force by correctional officers against plaintiff at a the Two Rivers Correctional Institution. A

4 - ORDER

disciplinary hearing decision finding plaintiff guilty of staff assault, disrespect, and disobedience of an order was reached on December 9, 2011, adopted on December 13, 2011 and upheld on review on May 11, 2012.

In January 2014, plaintiff was tried for sexual abuse arising out of the activities in the OSP playroom in 2011, and found not guilty.

On March 20, 2014, in response to a request by plaintiff to reinstate visitation, Superintendent Premo referred back to his December 8, 2011 visitation review and reiterated his decision to uphold the permanent removal of R from plaintiff's visitation list. Mr. Grower also responded to plaintiff's request by referring plaintiff to Or. Admin. R. 291-127-0320, which provides that only the visitor can request review.

On February 6, 2015, at plaintiff's request, Inspector General Williamson considered the OSP discipline in light of the 2014 trial. After personally listening to the entire trial proceeding, Inspector General Williamson was not persuaded that the "interests of justice" required ordering a new hearing or vacating the discipline and discipline was affirmed.

<u>Right to Visitation:</u> It is well settled that there is no absolute right to prison visitation. *See*, <u>Dunn v. Castro</u>, 621 F.3d 1196 at 1204 n. 4 (providing a lengthy list of court

5 - ORDER

decisions upholding denial of visitation to prisoners). (9th Cir. 2010) Inmates have no constitutional right of "access to a particular visitor." Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461 (1989); Keenan v. Hall, 83 F.3d 1083 1092 (9th Cir. 1996).[2]

In Overton v. Bazzetta, 539 U.S. 126, 131 (2003), the United States Supreme Court addressed incarceration and what it necessarily does to inmates' rights. At issue was a Michigan regulation limiting certain types and numbers of visitors, requiring visitors to be on an approved visitors list, and suspending all visits (except for clergy and attorneys) for two years for inmates who commit multiple rule violations. The Court ruled that the regulation did not violate the First, Eighth, or Fourteenth Amendment. *Overton* controls the outcome of this case. The withdrawal of plaintiff's visitation privileges in this case was reasonable and justified under the circumstances and did not violate plaintiff's constitutional rights.

Statute of limitations: 42 U.S.C. § 1983 does not contain a specific statute of limitations for constitutional torts. Therefore, federal courts "borrow" the state statute of

---

[2] Inmates also have no right to contact visitation. *See*, Barnett v. Centoni, 31 F.3d 813, 817 (9th Cir. 1994) (*per curiam*); Casey v. Lewis, 4 F.3d 1516, 1523 (9th Cir. 1993); Toussaint v. McCarthy, 801 F.2d 1080, 1113-14 (9th Cir. 1986).

6 - ORDER

limitations in 42 U.S.C. § 1983 actions. See, Wallace v. Kato, 549 U.S. 384, 387 (2007); Wilson v. Garcia, 471 U.S. 261, 266 (1985); Silva v. Crain, 169 F.3d 608, 610 (9th Cir. 1999); Vaughan v. Grijalva, 927 F.2d 476, 478 (9th Cir. 1991).

In Oregon, the two year statute of limitations for personal injury actions, O.R.S. 12.110(1) applies to civil rights actions under 42 U.S.C. § 1983. Sain v. City of Bend, 309 F.3d 1134, 1139 (9th Cir. 2002); Cooper v. City of Ashland, 871 F.2d 104, 105 (9th Cir. 1988); Davis v. Harvey, 789 F.2d 1332 (9th Cir. 1986).

Federal law determines when a cause of action accrues and the statute of limitations begins to run on a § 1983 claim. Wallace v. Kato, 549 U.S. at 388. A federal claim accrues when the plaintiff know or has reason to know of the injury which is the basis of the action. Pouncil v. Tilton, 704 F.3d 568 (9th Cir. 2012), *cert denied*, 134 S.Ct. 76 (1213); *see also*, Morales v. City of Los Angeles, 214 F.3d 1151, 1154 (9th Cir. 2000); Bagley v. CMC Real Estate Corp., 923 F.2d 758, 760 (9th Cir. 1991); DeAnza Properties X, Ltd. v. County of Santa Cruz, 936 F.2d 1084, 1086 (9th Cir. 1991); Vaughan, supra, 927 F.2d 486, 480 (9th Cir. 1991).

In addition, federal law controls when an action "commences" for the purposes of the statute of limitations. *Sain*, *supra* at 1136. Under FRCP 3, a 1983 action commences in

7 - ORDER

federal district court for purposes of the statute of limitations when the complaint is filed. Id. at 1138.

The key events giving rise to plaintiff's claims in this case are as follows:

* July 2011: initial termination of visitation.

* August 2011: Misconduct report.

* October 2011: Disciplinary Hearing regarding sexual assault and other violations at OSP.

* December 2011: Permanent removal of R from visiting list

* Disciplinary Hearing regarding staff assault and other violations at TRCI.

* May 2012: Decision upholding discipline at OSP.

May 2012: Decision upholding discipline at TRCI.

* May 2012: Review of Intensive Management Unit Placement.

* June 2012: Decision upholding permanent removal of R from plaintiff's visiting list.

I find that plaintiff's claims accrued at the time the final decisions regarding his discipline and visitation were made in 2012, and the statute of limitations began to run at that time. Plaintiff filed this action on June 23, 2015. Accordingly, plaintiff's claims are time barred.

It is irrelevant that plaintiff requested that his

8 - ORDER

discipline and visiting rights be reconsidered in 2014. Knox v. Davis, 260 F.3d 1009 (9th Cir. 2001); see also, Pouncil v. Tilton, supra, at 581 (questioning Knox).[3]

Based on the foregoing, I find that defendants' alleged conduct did not violate plaintiff Constitutional rights. I further find that assuming arguendo plaintiff's rights were violated, his claims are barred by the statute of limitations. Therefore, defendants are entitled to judgment as a matter of law.

I further find with regard to defendants' other arguments as follows:

Eleventh Amendment: To the extent plaintiff seeks to hold defendants liable for damages in their official capacities, plaintiff's claims are barred by the Eleventh Amendment. Brown v. Oregon Department of Corrections, 751 F.3d 983, 989 (9th Cir. 2014).

Personal involvement: The United States Supreme Court has held that state officials are not liable under § 1983 unless they play an affirmative part in the alleged constitutional violation. Rizzo v. Goode, 423 U.S. 362, 377 (1976). In

---

[3] Moreover, the final decision on visitation cannot be reconsidered for five years. Or. Admin. R. 291-127-0320(4). Plaintiff alleges that he will be released in 2016, so it is probable that the issue will be rendered moot before five years has elapsed.

9 - ORDER

addition, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999).

The crux of plaintiff's claims in this case are the decisions regarding whether plaintiff's visitation with his son would be permanently discontinued. The exhibits and declarations submitted in support of defendants' motion for summary judgment establish that Officer Reves, Sgt. Freeman, Cpl. Panther, Ms. Dodson, Ms. Parker, Mr. Williamson, Mr. Belleque and Ms. Barton had no responsibility in making the OSP discipline or visitations decisions. Although these defendants may have reported, investigated, and reviewed evidence, the ultimate discipline and decision to permanently to remove plaintiff's son from plaintiff's visiting list were made by defendants Premo and Grower.

There is no remaining genuine issue of material fact that the other individuals named as defendants in this case had minimal or no involvement in the ultimate decisions giving rise to plaintiff's claims. Therefore, they are entitled to judgment as a matter of law. See, Ballantyne v. Taylor, 2015 WL 9581811 at *3 (D. Or. Dec. 29, 2015).
10 - ORDER

Qualified immunity: Qualified immunity shields government officials from liability for damages when they make decisions that, even if constitutionally deficient, reasonably misapprehend the law governing the circumstances they confronted. Brosseau v. Haugen, 543 U.S. 194, 202 (2004); Harlow v. Fitzgerald, 457 U.S. 800 (1982).

While public officials are thus generally protected from civil liability under the doctrine, the defense will fail where their actions violate law that is clearly established, because "a reasonably competent public official should know the law governing his conduct." Id. at 819. "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law..'" Hunter v. Bryant, 502 U.S. 224 (1991) (quoting Malley v. Briggs, 475 U.S. 335341 (1986). An official should be denied qualified immunity only when "[t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Until recently courts considering an official claim of qualified immunity followed the two-step protocol established in *Saucier v. Katz*, 533 U.S. 194 (2001), which required the court first to determine whether the defendant violated a constitutional right and then to determine whether that right

11 - ORDER

was clearly established. *See, Pearson v. Callahan*, 555 U.S. 223 (2009) (overturning *Saucier* in part). In *Pearson v. Callahan*, the Supreme Court reversed this earlier rule and gave courts discretion to grant qualified immunity on the basis of the "clearly established" prong alone, without deciding in the first instance whether any right had been violated. *Id.* Thus, we may grant qualified immunity if 'the facts that a plaintiff has alleged or shown [do not] make out a violation of a constitutional right' or if 'the right at issue was [not] clearly established at the time of the defendant's alleged conduct.' *Id.* at 816, 818 (internal citations omitted). *See also*, James v. Rowlands, 606 F.3d 646 (9th Cir. 2010).

In this case, I find that defendants response to plaintiff's conduct did not violate any of plaintiff's clearly established constitutional rights. All of defendants' alleged conduct at issue in this case was consistent with a reasonable understanding of the law on prisoner visitation and each defendant acted in accordance with the administrative regulations and in a way that a reasonable corrections officer would act under the circumstances. Therefore, even if some minimal encroachment on plaintiff's rights did arguably occur, defendants are qualifiedly immune from liability for damages because their response was a reasonable interpretation of the

12 - ORDER

law governing the circumstances they confronted. Brosseau, 543 U.S. 194, 202; Harlow, 457 U.S. 800.

Damages: Pursuant to the PLRA, 42 U.S.C. § 1997e(e), "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." See generally, Oliver v. Keller, 289 F.3d 623 (9th Cir. 2002) (discussing extent of physical injury necessary to sustain a claim).

In this case, plaintiff is suing for denial of his visitation rights and is not entitled to damages for mental and emotional distress. In addition, plaintiff has not submitted any evidence of economic damages, and has presented no evidence that would justify an award of punitive damages.

Conclusion: Based on the foregoing, I find that there are no genuine issues of material fact remaining in this case and that defendants are entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment (#60) is allowed.

Plaintiff's Motion for Summary Judgment (#75) is denied.

The Clerk is directed to enter a judgment dismissing this action.

I find that an appeal from this order would be frivolous

/////

/////

13 - ORDER

and not taken in good faith. Therefore, plaintiff's in forma pauperis status is hereby revoked.

DATED this 12 day of October, 2016.

*Ann Aiken*
Ann Aiken
United States District Judge

14 - ORDER